**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| HAO CAI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1289 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| IMMIGRANT INVESTOR PROGRAM OFFICE, et al., | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

In 2016, Plaintiff Hao Cai ("Mr. Cai"), a national of China, invested half a million dollars in a U.S. enterprise seeking to fund the construction of a mixed-use building in California. Because of China's capital controls, he relied on a third-party intermediary to exchange his funds into U.S. dollars and transfer them to the United States. Based on this investment, he then sought to obtain lawful permanent residency in the United States through the "investor visa" program. U.S. Citizenship and Immigration Services ("USCIS") deemed him ineligible for a visa, however, because he was unable to show that his intermediary obtained the funds used in the exchange through lawful means. Mr. Cai seeks to challenge this determination through the present lawsuit, which he brings against USCIS and its Immigrant Investor Program Office (collectively, "Defendants") pursuant to the Administrative Procedure Act. Defendants have moved to dismiss this action, arguing that a recent amendment to the Immigrant and Nationality Act strips courts of jurisdiction over investor visa determinations until the investor has exhausted

all administrative appeals, which they contend Mr. Cai has failed to do.  For the reasons below, the Court grants Defendants' motion to dismiss.

## II.  FACTUAL BACKGROUND

### A.  Statutory Background

In 1990, Congress amended the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, to create a new preference allocation of immigrant visas for noncitizens who invest in job-creating enterprises in the United States ("EB-5 visas").  *See* Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978, 4989 (codified at 8 U.S.C. § 1153(b)(5)).  The EB-5 investor visa program, "so-named because it is the fifth employment-based visa category available to foreign nationals," *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020), is administered by USCIS and the State Department, *Delaware Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec.*, 106 F.4th 1195, 1198 (D.C. Cir. 2024).

To qualify for an EB-5 visa, a foreign national must invest a designated amount of lawfully obtained capital in a new commercial enterprise ("NCE") that "will benefit the United States economy by creating full-time employment" for at least ten U.S. workers.  8 U.S.C. § 1153(b)(5)(A)(ii).  The job-creation requirement can also be satisfied by investing in a USCIS-approved "regional center"—an entity organized for the promotion of economic growth in specific geographic areas.  *Delaware Valley*, 106 F.4th at 1198.  After making the qualifying investment, the foreign national must file with USCIS a petition—titled Form I-526 Immigration Petition by Alien Investor ("I-526 petition")—to be classified as an immigrant investor.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023).  The I-526 petition is "one of the first steps to becoming a lawful permanent resident." *Mukkavilli v. Jaddou*, No. 22-

cv-2289, 2023 WL 4029344, at *2 (D.D.C. June 15, 2023), *aff'd*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024).

In March 2022, Congress passed the EB-5 Reform and Integrity Act ("RIA"), which amended various aspects of the EB-5 visa process. *See* Pub. L. No. 117-103, 136 Stat. 1070 (2022) (codified at 8 U.S.C. § 1153(b)(5)). Among other changes, Section 103 of the RIA revamped the regional center program, imposing new reporting and eligibility requirements on regional centers and investors. *See id.* § 103. Relevant here, Section 103 also added a new provision to the INA that bars judicial review of agency determinations involving the EB-5 visa process if administrative remedies have not been exhausted. *See id.* (codified at 8 U.S.C. § 1153(b)(5)(P)(ii)). The new jurisdictional bar reads: "[N]o court shall have jurisdiction to review a determination under this paragraph until . . . the alien investor has exhausted all administrative appeals." 8 U.S.C. § 1153(b)(5)(P)(ii).

## B. Procedural Background

In 2016, Mr. Hao Cai filed an I-526 petition with USCIS, seeking to prove his eligibility for an EB-5 visa based on a half-million-dollar investment in a regional center and NCE in the United States. Compl. ¶ 34, ECF No. 1. As noted, Mr. Cai received assistance from an intermediary, Mr. Xu Chen ("Exchanger"), to exchange his investment capital into U.S. dollars and transfer it out of mainland China. *Id.* ¶¶ 36–39.

On May 30, 2024, USCIS's Immigrant Investor Program Office ("IIPO") denied Mr. Cai's I-526 petition. *See* May 30, 2024 Decision at Ex. B-6, ECF No. 1-2. IIPO determined that Mr. Cai's investment in the United States ultimately derived from the Exchanger's U.S. dollars, and that Mr. Cai's supporting evidence was insufficient to corroborate the lawful source of the Exchanger's funds. *See id.* at Exs. B-5–B-6. Mr. Cai then filed a Form I-290B, Notice of

Appeal or Motion, requesting that IIPO reopen or reconsider its denial.  *See* Pl.'s Opp'n at 2.  On October 31, 2024, IIPO dismissed his I-290B motion to reopen and/or reconsider.  *See* Oct. 31, 2024 Decision at Ex. A-6, ECF No. 1-1.  Despite new evidence presented, IIPO again found that Mr. Cai had not demonstrated the lawful source of the Exchanger's funds.  *See id.*

In its I-290B dismissal, IIPO informed Mr. Cai that he had the right to file another motion to reopen and/or reconsider or to appeal to USCIS's Administrative Appeals Office ("AAO").  *See id.* at Ex. A-1.  The AAO conducts *de novo* review of EB-5 visa eligibility determinations, meaning that it can "look[] at the record anew," consider new evidence, and "address new issues that were not raised or resolved" in prior decisions.  *U.S. Citizenship & Immigration Services*, AAO Practice Manual §§ 3.4, 3.8, https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/practice-manual/chapter-3-appeals (last updated Oct. 30, 2025).  Rather than appealing to the AAO, however, Mr. Cai initiated the present action, through which he seeks an order from this Court setting aside IIPO's denial of his I-526 petition and subsequent dismissal of his I-290B motion.  Compl. ¶ 3.

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a case over which it lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Jurisdictional limits "are especially important in the agency review context, where 'Congress is free to choose the court in which judicial review of agency decisions may occur.'" *Humane Soc'y of the United States v. McCarthy*, 209 F. Supp. 3d 280, 283 (D.D.C. 2016) (quoting *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013)).

4

"When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court 'assumes the truth of all material factual allegations in the complaint and construes the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Id.* (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 172–73 (D.D.C. Jan. 15, 2020)). Courts must presume that "a cause lies outside [their] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen*, 511 U.S. at 377.

## IV.  ANALYSIS

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Under the RIA's new jurisdictional bar, Defendants argue, this Court lacks jurisdiction over Mr. Cai's challenge to the denial of his I-526 petition because Mr. Cai failed to appeal the denial to the AAO. *See generally* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 7. Mr. Cai responds that the jurisdictional bar does not apply to him because he filed his I-526 petition in 2016, before the RIA's enactment in 2022. *See* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n") at 9–12, ECF No. 8. Alternatively, he argues that further administrative appeals would have been futile in his case because of USCIS's firm position that an investor is not entitled to an EB-5 visa unless he can prove the lawful source of his invested funds, including any funds exchanged by an intermediary. *See id.* at 12. The Court examines these arguments in turn.

**A. RIA's Jurisdictional Bar**

The RIA's jurisdictional bar, enacted through Section 103 of the RIA, is part of a broader scheme for administrative appellate review of determinations involving EB-5 visas. Specifically, subsection (i) of 8 U.S.C. § 1153(b)(5)(P) instructs USCIS to "provide an opportunity for an administrative appellate review by the [AAO] . . . of any determination made under this paragraph, including . . . (III) a petition by an alien investor for status as an immigrant under this paragraph." 8 U.S.C. § 1153(b)(5)(P)(i). Subsection (ii) then limits judicial review of such determinations if further administrative remedies remain. As noted, this new exhaustion requirement provides that "no court shall have jurisdiction to review a determination under this paragraph until . . . the alien investor has exhausted all administrative appeals." 8 U.S.C. § 1153(b)(5)(P)(ii).

Defendants argue that the RIA's jurisdictional bar precludes the Court's review in the instant case because Mr. Cai did not exhaust all administrative appeals before filing this lawsuit. *See* Defs.' Mot. at 2–3. Although Mr. Cai filed an I-290B motion with IIPO to reopen and/or reconsider its denial of his I-526 petition, which IIPO then dismissed, Defendants observe that he did not avail himself of the option to appeal these decisions to the AAO. *See id.* at 3. Mr. Cai concedes that the RIA instituted a mandatory exhaustion requirement to obtaining judicial review of EB-5 determinations, but he argues that this requirement does not apply to him because he filed his I-526 petition before the RIA went into effect. *See* Pl.'s Opp'n at 9.

The plain text of the jurisdictional bar resolves this dispute in Defendants' favor. Subsection 1153(b)(5)(P)(ii) divests courts of jurisdiction "to review a *determination* under this paragraph until . . . the alien investor has exhausted all administrative appeals," 8 U.S.C. § 1153(b)(5)(P)(ii) (emphasis added), including a determination involving "a petition by an alien

6

investor for status as an immigrant," *id.* § 1153(b)(5)(P)(i).  As Defendants note, the statutory language refers to "determinations," not filings.  *See* Defs.' Mot. at 3.  Mr. Cai seeks judicial review of two agency determinations: IIPO's May 30, 2024 denial of his I-526 petition and its October 31, 2024 dismissal of his I-290B motion.  Although Mr. Cai filed his I-526 petition in 2016, IIPO did not issue the determinations Mr. Cai now challenges until after the RIA went into effect in 2022.  The Court therefore agrees with Defendants that application of the RIA's jurisdictional bar here would not be impermissibly retroactive.  *See id*.  At least one other court that has analyzed this provision under similar facts has reached the same conclusion.  *See Pac. Nw. EB-5 Reg'l Ctr. v. Noem*, No. C25-0597-KKE, 2025 WL 2645656, at *7 (W.D. Wash. Sept. 15, 2025) (finding merit in the government's argument "that the RIA's exhaustion requirement addresses review of agency determinations, rather than review of petitions, and thus is appropriately applied to any post-RIA agency determination," even where the underlying petition was originally filed before the RIA's enactment).

      Mr. Cai resists this straightforward reading of the jurisdictional bar.  He argues that the RIA's reforms, including the new jurisdictional bar, do not apply to pre-RIA filers like Mr. Cai, but instead represent "a clean break from the prior [EB-5] regime."  *See* Pl.'s Opp'n at 9 (quoting *Mukkavilli*, 2023 WL 4029344, at *9).  Mr. Cai observes that Congress specified that Section 103 of the RIA, which includes the jurisdictional bar, was to take effect "60 days after the date of the enactment of this Act."  *See* Pub. L. No. 117-103, § 103(b)(2), 136 Stat. 1070, 1100 (2022) (codified at 8 U.S.C. § 1153 note).  In his view, this evinces congressional intent for "pre-Act standards [to] apply to pre-Act filers."  *See* Pl.'s Opp'n at 10 (quoting *Mukkavilli*, 2023 WL 4029344, at *9).  Before the RIA's enactment, there was no mandatory exhaustion requirement,

7

so Mr. Cai insists that the new jurisdictional bar poses no hurdle to the Court's assertion of jurisdiction now. *See id.* at 9.

Mr. Cai relies heavily upon a case from another court in this district, *Mukkavilli v. Jaddou*, No. 22-cv-2289, 2023 WL 4029344, at *2 (D.D.C. June 15, 2023), for his proposition that the new jurisdictional bar does not apply to pre-RIA filers. In *Mukkavilli*, a prospective immigrant investor from India sought to compel USCIS to adjudicate his I-526 petition. As relevant in that case, nationals from any one country cannot claim more than seven percent of the EB-5 visas available each year, regardless of demand. *See Mukkavilli*, 2023 WL 4029344, at *2. When Mr. Mukkavilli filed his I-526 petition in 2020, EB-5 visas were still available for Indian nationals. In 2022, however, the RIA introduced new visa processing and eligibility rules that set aside certain percentages of all available visas for specific investments, including those made in rural areas. *See id.* The reserved rural visas reduced the number of visas available in the "unreserved" category, and wholly eliminated them for Indian nationals who filed after 2019, as was Mr. Mukkavilli's case. *See id.* at *4. To make matters worse for Mr. Mukkavilli, although he had invested in a rural area, USCIS deemed pre-RIA filers like Mr. Mukkavilli ineligible for the new rural set-aside. *See id.* at *8. Mr. Mukkavilli challenged this policy choice, arguing that USCIS was unlawfully withholding a rural visa number from him. *See id.* But the district court rejected that challenge. It observed that Congress intended Subsection 102(e) of the RIA, which contains the new set-aside categories, to "take effect on the date of the enactment of this Act." *Id.* (quoting Pub. L. No. 117-103, § 102(e), 136 Stat. 1070, 1075 (2022) (codified at 8 U.S.C. § 1153 note)). According to the district court, this indicated that the new set-aside categories applied only prospectively. *See id.* at *8–9.

*Mukkavilli* does not help Mr. Cai, however.  The district court there explained that a "default rule of interpretation" holds that statutes and regulations "typically only cover conduct after their enactment." *Id.* at *9.  This allows individuals "to know what the law is and to conform their conduct accordingly." *Id.* (citation omitted).  Applying this presumption against retroactivity, the district court declined to extend the RIA's new visa processing and eligibility rules to an I-526 petition filed in accordance with prior rules.  But that holding is not inconsistent with this Court's application of the RIA's jurisdictional bar here.  Crucially, the jurisdictional bar regulates not the filing of an I-526 petition, but the failure to exhaust administrative remedies prior to seeking judicial review.  Mr. Cai's failure to exhaust constitutes post-enactment conduct, as IIPO did not deny his I-526 petition or dismiss his I-290B motion until more than two years *after* the RIA was enacted.  And at that point, Mr. Cai could have "know[n] what the law [wa]s" and "conform[ed] [his] conduct accordingly." *Id.*  In other words, he could have appealed IIPO's unfavorable determinations to the AAO, as noted in the I-290B dismissal, but he instead chose to file this action.  Under these circumstances, the Court sees no impediment to applying the RIA's jurisdictional bar to Mr. Cai's post-enactment conduct.

Mr. Cai's remaining arguments are also without merit.  First, he argues that Congress intended for "pre-[RIA] filers [to] continue to be judged according to the rules that existed prior to March 2022." Pl.'s Opp'n at 12.  However, if Congress intended to exempt pre-RIA filers from the application of the jurisdictional bar, it could have simply said so.  In fact, in a separate section of the RIA, Congress did specify that amendments made by that section would not apply if the underlying I-526 petition "was filed . . . before the date of the enactment of this Act." *See* Pub. L. No. 117-103, § 104(b)(2)(B), 136 Stat. 1070, 1103 (2022) (codified at 8 U.S.C. § 1186b note).  Second, Mr. Cai identifies two other cases from this district involving pre-RIA filers in

9

which "neither the government, nor the Court questioned whether the pre-[RIA] filers exhausted their administrative remedies prior to seeking judicial review." See Pl.'s Opp'n at 8 (citing *Zhou v. Noem*, No. 19-cv-2650, 2025 WL 416152 (D.D.C. Feb. 6, 2025); *Sun v. United States Citizenship & Immigr. Servs.*, No. 21-cv-1612, 2025 WL 947463 (D.D.C. Mar. 28, 2025)). But in both *Zhou* and *Sun*, USCIS denied the investors' I-526 petitions *before* the RIA's jurisdictional bar took effect, meaning that there, unlike here, the investors were free to challenge those denials in court without first exhausting their administrative remedies.

### B. Futility Exception

Even if the RIA's jurisdictional bar applies to Mr. Cai, as this Court has now determined, Mr. Cai argues that his failure to exhaust does not divest the Court of jurisdiction over his case because further administrative appeal would have been futile. See Pl.'s Opp'n at 12. Mr. Cai notes that USCIS has consistently denied I-526 petitions by investors who, like Mr. Cai, relied on intermediaries to exchange investment funds but are unable to show that the intermediary obtained the exchanged funds legally. See id. at 1, 12. Due to USCIS's "firm position," Mr. Cai argues that appealing the denial of his I-526 petition could not have provided him with his requested relief. See id. at 12. He therefore urges the Court to assert jurisdiction here based on a "futility exception to exhaustion requirements." Id.

The Court declines to do so. Although courts may recognize a "futility exception" to *judge-made* exhaustion doctrines, the Supreme Court has instructed that courts "may not excuse a failure to exhaust" when confronted with a *statutory* exhaustion requirement. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Not even "special circumstances" can overcome the plain language of a statute mandating exhaustion before seeking judicial review. Id. Here, the RIA's jurisdictional bar is quite clear that courts may not review an EB-5 determination "until . . . the alien investor

10

has exhausted *all* administrative appeals." 8 U.S.C. § 1153(b)(5)(P)(ii) (emphasis added). In any event, even if a futility exception were available, the Court doubts that it would apply. As discussed, Mr. Cai had the option to appeal IIPO's unfavorable determinations to the AAO, which reviews EB-5 determinations *de novo*. Mr. Cai does not explain why, under a new record and with supplemental briefing and evidence, the AAO would not have been able to grant him the relief he now requests from this Court.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 7) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 15, 2026                                                                RUDOLPH CONTRERAS
                                                                                                     United States District Judge